Argued October 4; reversed October 24; rehearing denied
November 21, 1933

# KIESSENBECK *v.* KIESSENBECK

(26 P. (2d) 58)

*P. J. Gallagher,* of Portland (Cecelia P. Gallagher, of Portland, on the brief), for appellant.

*Earnest M. Jachetta,* of Portland (Neal Crounse, of Portland, on the brief), for respondent.

BELT, J.  This is a suit for separate support and maintenance. Plaintiff alleges that she and the defendant were married at Portland, Oregon, on the 26th day of December, 1917, and that there was born, as an issue of such marriage, a daughter who is now about ten years of age. After alleging facts relative to the mistreatment of plaintiff by defendant, she avers that the defendant "repeatedly packed his belongings and threatened to leave plaintiff and plaintiff believes that the intention of defendant is to leave her without proper provision for her support". Plaintiff also alleges that defendant is an able-bodied man and earns, or is capable of earning, $500 per month as an auditor.

After the court overruled a general demurrer to the complaint, defendant answered denying the allegations in reference to failure to support plaintiff and alleged affirmatively that he has long been out of work and is without funds or property other than that which plaintiff seeks to have set aside to her own use and benefit. As a further answer and cross complaint, the defendant seeks to have his marriage with the plaintiff annulled on the ground that at the time the same was solemnized she was incapable of contracting marriage in that she had a husband living in the state of New York from whom she had not legally obtained a decree of divorce. Plaintiff, after denying generally the allegations of the cross complaint, alleged in reply that she duly obtained the divorce decree in the state of Texas in De-

cember, 1917, and that defendant, at the time of their marriage, had full knowledge of her former marriage and of the facts pertaining to the divorce proceedings. As a further and separate reply, plaintiff alleges in substance that no fraud or deception was practiced on the defendant and that after the marriage was solemnized in Portland, Oregon, in December, 1917, plaintiff and defendant lived and cohabited together as man and wife for a period of approximately fifteen years and that, by reason thereof, the defendant is estopped from denying the validity of the marriage and of the divorce decree rendered in the state of Texas.

The trial court, upon hearing, rendered a decree of separate maintenance and awarded plaintiff the custody of the minor child, reserving to the defendant the right to visit the same at reasonable times. It was further ordered and decreed that defendant pay to plaintiff for her support and that of the child the sum of $50 per month. Plaintiff was also granted the use or occupancy of the dwelling house owned by plaintiff and defendant and allowed the sum of $500 as attorney fees. Defendant appeals.

Plaintiff married Edmund I. Sheppard in the state of New York in 1913. In June, 1917, she instituted a suit for divorce against Sheppard charging him with cruel and inhuman treatment and a decree was rendered in her favor on December 10, 1917. Service was had by publication of summons. In the affidavit for publication of summons the plaintiff averred that the last place of residence of Sheppard "known to the affiant, was at No.— Street, in the city of Jamaica, Long Island, State of New York, where he resided on the — day of ——, 191—; that the present residence of the said defendant is unknown to the affiant". In the

light of the record in this case, it is clear that plaintiff knew where Sheppard resided in New York. After obtaining the decree in Texas, the plaintiff, without delay, went to Portland, Oregon, where the marriage was solemnized with the defendant herein on December 26, 1917, notwithstanding section 4640 of the Revised Civil Code of the State of Texas provides that "Neither party to a divorce suit, when the divorce is granted upon the ground of cruel treatment shall marry any other person for a period of twelve months next after such divorce is granted, but the parties so divorced may marry each other at any time".

The defendant Kiessenbeck, however, was not deceived for at the time of the proposal of marriage at Los Angeles in May, 1917, he knew that plaintiff was not divorced and that she was going to Texas for the express purpose of obtaining a decree. She says that he wished her to go to Reno, Nevada, where practically over night she could be made a free woman. Plaintiff, however, had a brother living in Texas and it is only natural that she went to the "Lone Star" state even though it did involve somewhat the "law's delay".

In her suit for divorce plaintiff alleged, in keeping with the statute, that she had been an actual bona fide inhabitant of the state of Texas for more than twelve months and had resided in Jefferson county of said state for more than six months next preceding the filing of the suit. This averment was absolutely false. It appears from her own testimony that plaintiff did not go to Texas until June, 1917.

In the light of the record, what extraterritorial effect can be given to the decree of divorce rendered in Texas and obtained by the perpetration of a fraud upon

the court? A similar question arose in *Stimson v. Stimson, et al.,* 140 Or. 507 (13 P. (2d) 368), and it was thus answered:

"Because of the perfidy of Stimson, we are unwilling to give extraterritorial effect to the decree of divorce which was thus obtained by his deception. In so holding, we disavow any intention of establishing a rule that the mere fact, that a decree of divorce granted against a nonresident defendant in a sister state is based upon constructive service, is sufficient to prevent such decree from being valid and effective in Oregon. Each case must stand upon its own facts and circumstances. Upon such a record, a decree of divorce has no obligatory extraterritorial force in the state of defendant's domicile."

Also see *Foshier v. Narver,* 24 Or. 441 (34 P. 21, 41 Am. St. Rep. 874), wherein the court said:

"The doctrine is now well settled that the constitutional provision that full faith and credit shall be given to the judicial proceedings of other states does not preclude inquiry into the jurisdiction of the court in which the judgment was rendered over the subject matter, or the parties affected by it, nor into the facts necessary to give such jurisdiction: Thompson v. Whitman, 18 Wall. 457; Freeman, Judg. §§ 562, 563; Black, Judg. § 901."

In *Haddock v. Haddock,* 201 U. S. 562 (50 L. Ed. 867, 26 S. Ct. 525, 5 Ann. Cas. 1), the court said:

"* * * it is elementary that where the full faith and credit clause of the Constitution is invoked to compel the enforcement in one state of a decree rendered in another, the question of the jurisdiction of the court by which the decree was rendered is open to inquiry. And if there was no jurisdiction, either of the subject matter or of the person of the defendant, the courts of another state are not required, by virtue of the full faith and credit clause of the Constitution, to enforce such decree."

Since plaintiff did not comply with the statutory requirements relative to residence in that state, it is clear that the court did not have jurisdiction to render the decree: Art. 4631, Chap. 4, Rev. Civil Statutes of Texas. If no force or effect can be given to such decree, it follows that plaintiff was not competent to enter a marriage contract with defendant for the simple reason that she had a husband in the state of New York.

■■ Aside from our conclusion that a demurrer to the complaint should have been sustained for the reason that there was no allegation that defendant failed and refused to support the plaintiff, it is certain that her claim for separate support and maintenance can not be based upon a void marriage.

Having concluded that the court in Texas did not acquire jurisdiction to render the decree of divorce, it is unnecessary to determine whether the violation of the statute against remarriage within one year after divorce was granted would render the marriage in Oregon invalid. This is a question upon which the courts are in conflict. See exhaustive note 32 A. L. R. 1139.

■ We next pass to the question as to whether the defendant is entitled to a decree annulling the marriage. Ordinarily where parties are in pari delicto a court of equity will not afford relief, but there are well recognized exceptions to this general rule. In the instant case the interest of the state is paramount and, notwithstanding the laches involved and the fact that defendant was not the victim of any fraud, equity, even at this late day, will, on the ground of public policy, terminate a social relationship polygamous in character: *Davis v. Green,* 91 N. J. Eq. 17 (108 Atl. 772);

*Arado v. Arado,* 281 Ill. 123 (117 N. E. 816, 4 A. L. R. 28); Schouler on Marriage, Divorce, Separation and Domestic Relations, § 1162.

The decree of the lower court is reversed and the cause remanded with directions to enter a decree annulling the marriage, awarding plaintiff custody of the minor child, and directing that defendant pay to plaintiff the sum of $30 per month for the support and maintenance of the said child. Neither party will recover costs or disbursements here or in the lower court.

RAND, C. J., ROSSMAN and KELLY, JJ., concur.