993 P.2d 539

Joseph M. **SOUSARIS**, Individually; as Special Administrator for the Estate of Rosemary Sousaris, deceased; and as Prochein Ami of Michael J. Sousaris and Nicholas A. Sousaris, minors, Respondents–Claimants–Appellees,

v.

Barry D. **MILLER**, M.D., dba Center for Cosmetic Surgery, Petitioner–Respondent–Appellant,

and

John Does 1–10, Jane Does 1–10, Doe Corporations 1–10; Doe Partnerships 1–10; Doe "Non–Profit" Organizations 1–10 and Doe Governmental Agencies 1–10, Defendants.

No. 21167.

Supreme Court of Hawai'i.

Jan. 31, 2000.

ion of the Intermediate Court of Appeals (ICA) in *Sousaris v. Miller*, 92 Hawai'i 534, 993 P.2d 568 (Haw.Ct.App.1998) [hereafter "ICA's opinion"]. In its opinion, the ICA framed the dispositive issue as whether HRS chapter 658 allowed a party to amend a timely petition to vacate an arbitration award by raising a new ground to vacate the arbitration award during the period between the expiration of the ten-day period set forth in Hawai'i Revised Statutes (HRS) § 658–11 (1993)[1] and the entry of the circuit court's order denying the petition to vacate and granting the petition to confirm the arbitration award. The ICA answered the foregoing question in the negative and denied Dr. Miller's appeal. We granted certiorari to determine whether a party could file a motion for reconsideration from the grant or denial of a petition to confirm or vacate an arbitration award in a HRS chapter 658 proceeding. Upon further review, we hold, pursuant to the Hawai'i Rules of Civil Procedure, that a party may seek reconsideration of a order *granting* an arbitration award. However, insofar as Dr. Miller's motion for reconsideration asserted a new statutory ground to vacate the arbitration award and proffered new evidence directed exclusively at the new ground, we agree with the ICA that Dr. Miller's motion for reconsideration contravened the stringent ten-day notice requirements set forth in HRS § 658–11 and, thus, was untimely.

We believe, however, that it is necessary to clarify that a motion for reconsideration, which is limited to new *evidence* that (1) supports a statutory basis that has already been raised in a timely motion to vacate pursuant to HRS §§ 658–9 (1993)[2] and 658–

Francis T. O'Brien, on the briefs, Honolulu, for petitioner-respondent-appellant.

L. Richard Fried, Jr. and John D. Thomas, Jr., on the briefs, Honolulu, for respondents-claimants-appellees.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by RAMIL, J.

We accepted the application for a writ of certiorari of petitioner-respondent-appellant Barry D. Miller, M.D. (Dr. Miller), dba Center for Cosmetic Surgery, to review the opin-

---

1. Hawai'i Revised Statutes (HRS) § 658–11 (1993) provides:

   **Notice of motion to vacate, modify, or correct; stay.** *Notice of a motion to vacate, modify, or correct an award, shall be served,* in the manner prescribed for service of notice of a motion in an action, *upon the adverse party or the adverse party's attorney within ten days after the award is made and served.* For the purposes of the motion any judge who might make an order to stay the enforcement of a judgment, in an action brought in the same court, may make an order to be served with the

notice of motion, staying the proceedings of the adverse party to enforce the award. The record shall be filed with the motion as provided by section 658–13.
   (Emphases added.)

2. HRS § 658–9 (1993) provides:

   **Vacating award.** In any of the following cases, the court may make an order vacating the award, upon the application of any party to the arbitration:
      (1) Where the award was procured by corruption, fraud, or undue means;

11 and (2) could not have been raised in a petition to vacate nor could have been discovered, despite due diligence, prior to the expiration of the ten-day period in HRS § 658–11, would not contravene HRS § 658–11.

## I. BACKGROUND

Rosemary Sousaris (Rosemary) died as a result of Dr. Miller's alleged negligence in performing liposuction surgery and in rendering post-operative treatment. Pursuant to the terms of an arbitration agreement between Rosemary and Dr. Miller, respondent-claimant-appellee Joseph Sousaris (Sousaris), in his capacities as an individual, special administrator of his late wife's estate, and as next friend of his late wife's surviving minor children, Michael J. Sousaris and Nicholas A. Sousaris, brought a negligence claim against Dr. Miller. Dr. Miller and Sousaris participated in selecting Peter Char, Esq. (Char), Kathy Muller (Muller), and Ronald P. Peroff, M.D. (Dr. Peroff), as the arbitration panel in this case. In his notice of appointment, Dr. Peroff divulged that Richard K. Quinn (Quinn), counsel for Dr. Miller during the arbitration, had defended him in a medical malpractice suit in which L. Richard Fried, Jr. (Fried), counsel for Sousaris, had represented the plaintiff.

### A. Arbitration award

The arbitration panel issued its decision on July 7, 1997 (the arbitration award), wherein Char and Dr. Peroff concluded that Dr. Miller was "actionably negligent in his care and treatment of [Rosemary]." Although Muller did not concur with Char and Dr. Peroff as to Dr. Miller's negligence, she joined Char and Dr. Peroff in determining that "the evidence does not support [Dr. Miller's] contention that [Rosemary] was negligent or assumed the risk of her death and that Tripler Army Medical Center was negligent in its care and

(2) Where there was evident partiality or corruption in the arbitrators, or any of them;
(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced;

treatment of [Rosemary] between Friday, January 12, 1996 and Thursday, January 18, 1996[, the period after Dr. Miller treated Rosemary]." Accordingly, the arbitration award ordered Dr. Miller to pay $1,635,776.44 in damages to Sousaris.

### B. Confirmation proceedings

On July 8, 1997, Sousaris filed a petition to confirm the arbitration award, and on July 16, 1997, Dr. Miller filed a petition to vacate the arbitration award. Both petitions were set for hearing on August 1, 1997.

In his memorandum in support of his July 16, 1997 petition to vacate, Dr. Miller alleged that there was a "social relationship" between Dr. Peroff and Fried, and that Dr. Peroff's failure to disclose such a relationship amounted to "evident partiality" which constituted grounds for vacating the arbitration award under HRS § 658–9(2). See supra note 2. In an affidavit attached to the memorandum in support of his July 16, 1997 petition to vacate, Dr. Miller asserted that sometime after the arbitration award was issued, a person, whose identity Dr. Miller could not remember, called Dr. Miller and reported that he or she observed Dr. Peroff and Fried playing tennis at some unidentified time. In light of this allegation, Dr. Miller urged the circuit court to conduct an evidentiary hearing on the issue of impropriety and to grant him additional time for discovery.

In a July 23, 1997 affidavit, Fried responded to Dr. Miller's allegations by admitting that he did recall playing tennis with Dr. Peroff in a tournament about ten years ago. At that time, Fried represented a plaintiff in a medical malpractice suit against Dr. Peroff. Fried also stated that he may have played tennis with Dr. Peroff on one other occasion in a tournament "many years ago." Dr. Per-

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award, upon the subject matter submitted, was not made.
Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may in its discretion direct a rehearing by the arbitrators.

off also submitted a July 23, 1997 affidavit that was consistent with Fried's recollection.

At the August 1, 1997 hearing on the petitions to confirm and to vacate the arbitration award, the circuit court found that "the evidence presented fails to establish evident partiality or even a reasonable impression of partiality in this case, or any other grounds pursuant to [HRS § ] 658–9 which would warrant vacating the award in this case." Accordingly, the circuit court orally granted Sousaris's petition to confirm the arbitration award and denied Dr. Miller's petition to vacate. On August 14, 1997, the circuit court filed its written order memorializing its oral determination.

## C. *Dr. Miller's motion to reconsider*

Not waiting until the circuit court filed its written order, Dr. Miller filed a motion styled as "Motion to Reconsider Order Denying Respondent [Dr. Miller's] Motion to Vacate [the] Arbitration Award or, in the Alternative for Relief from Order Confirming [the] Arbitration Award" (the August 8, 1997 motion). The August 8, 1997 motion raised a new ground for vacating the arbitration award based on new evidence that allegedly did not become available until after the circuit court had orally granted Sousaris's petition to confirm the arbitration award. In his memorandum in support of the August 8, 1997 motion, Dr. Miller asserted that Dr. Peroff engaged in *ex parte* consultations with other physicians in violation of section 31 of the arbitration rules, which mandated that all evidence be taken in the presence of all of the arbitrators and all of the parties. Such conduct, according to Dr. Miller, constituted prejudicial misconduct under HRS § 658–9(3). *See supra* note 2. An affidavit submitted by Quinn served as the basis for Dr. Miller's assertion of a new ground to vacate the arbitration award. Quinn stated that after receiving the arbitration award, he attempted to contact Dr. Peroff to discuss Dr. Peroff's analysis of the evidence. After several unsuccessful attempts, Quinn finally spoke with Dr. Peroff on August 1, 1997, the day that the circuit court heard arguments on Sousaris's petition to confirm and Dr. Miller's petition to vacate the arbitration

award. Quinn claimed that during their telephone conversation, Dr. Peroff admitted to consulting several outside physicians and to using the information gleaned from those consultations to arrive at his conclusion that Dr. Miller was negligent. Along with his affidavit, Quinn attached a "transcript" of the conversation with Dr. Peroff based on the speed-written notes that Quinn took during the conversation.

On August 20, 1997, Sousaris filed a memorandum in opposition to the August 8, 1997 motion, wherein Sousaris argued: (1) that Dr. Peroff properly consulted with outside medical experts to corroborate his own conclusions; (2) that Dr. Peroff's statements were inadmissible to impeach the arbitration award; and (3) that the August 8, 1997 motion was untimely insofar as it advanced a new basis for vacating the arbitration award after the ten-day period set forth in HRS § 658–11 had elapsed. In an affidavit attached to Sousaris's memorandum in opposition, Dr. Peroff maintained that he reached his decision based solely on his evaluation of the evidence presented during the arbitration proceedings. Dr. Peroff claimed that he contacted other physicians to confirm the conclusions that he already reached. Moreover, Dr. Peroff related that Char, his fellow arbitrator, instructed Dr. Peroff not to discuss the award with the attorneys until ten days after the arbitration award was issued.

■ On August 25, 1997, the circuit court, without a hearing, issued a minute order denying the August 8, 1997 motion and filed a written order to the same effect on September 5, 1997. The September 5, 1997 order, however, did not set forth the circuit court's the rationale for denying the August 8, 1997 motion. On September 15, 1997, Dr. Miller filed an appeal from the August 14, 1997 and the September 5, 1997 orders. On November 30, 1997, however, this court filed an order of dismissal wherein we determined that Dr. Miller's September 15, 1997 appeal was premature. On November 28, 1997, Dr. Miller filed his second notice of appeal wherein, in addition to the August 14, 1997 and September 5, 1997 orders, he appealed

from the November 7, 1997 judgment filed by the circuit court.[3]

### D. *The ICA's opinion*

The ICA included the following time line of relevant events to set the proper context for framing its discussion of the dispositive issue:

| July 7, 1997 | Award of Arbitrators |
| July 8, 1997 | Petition to Confirm |
| July 16, 1997 | Petition to Vacate |
| August 1, 1997 | Oral denial of the Petition to Vacate and oral grant of the Petition to Confirm |
| August 8, 1997 | Motion to Reconsider the oral denial of the Petition to Vacate and the grant of the Petition to Confirm |
| August 14, 1997 | Entry of the Order Denying Motion to Vacate and Order Confirming Award |
| August 25, 1997 | [Minute order denying] the August 8, 1997 Motion to Reconsider |
| September 5, 1997 | Entry of the Order Denying Reconsideration |
| September 15, 1997 | Notice of Appeal of the August 14, 1997 order and the September 5, 1997 order |

ICA's opinion at 545, 993 P.2d at 579. The ICA framed the dispositive issue as follows:

Does the fact that a party timely filed a motion to vacate based on [arbitrator partiality] within the HRS § 658–11 ten-day period then permit the party after the expiration of the HRS § 658–11 ten-day period, after the hearing and the oral denial of the motion to vacate and the oral granting of the motion to confirm the arbitrator's award, but prior to entry of the written order to, in effect, amend the motion to vacate by asserting [arbitrator misconduct]? In other words, once a party gives timely notice of a motion to vacate, is that party permitted the time between the expiration of the ten-day period and the entry of the order denying the motion to vacate and granting the motion to confirm the arbitrators' award to add to the grounds asserted in the motion to vacate?

ICA's opinion at 544–545, 993 P.2d at 578–579. The ICA answered the aforementioned question in the negative, reasoning that HRS § 658–11 "does not permit amendments after . . . ten days [following the date that the arbitration award was made and served.]" ICA's opinion at 545, 993 P.2d at 579. According to the ICA, such a holding finds support in the case law of other jurisdictions.

As noted in 4 Am.Jur.2d *Alternative Dispute Resolution* § 253 (1995) (footnote omitted), "[i]t appears that a party who had a valid ground for challenging an award but who fails to raise that challenge within the statutory time limit is not permitted to raise that challenge when the opponent applies for confirmation of the award." The reason for this rule is that, "[i]n order to comply with the purpose of expeditious resolution of disputes through arbitration, time limits in which to challenge arbitration awards must be strictly enforced." *Knass v. Blue Cross of California,* 228 Cal.App.3d 390, 395, 279 Cal.Rptr. 124, 126 (1991).

ICA's opinion at 545, 993 P.2d at 579. The ICA concluded by observing that allowing "Dr. Miller to oppose the confirmation [of the arbitration award] by raising [arbitrator misconduct as a ground to vacate the arbitration award] after the expiration of the HRS § 658–11 ten-day period would render the HRS § 658–11 ten-day period meaningless." ICA's opinion at 545, 993 P.2d at 579.

## II. DISCUSSION

A. *Hawai'i Rules of Civil Procedure (HRCP) Rule 59(e) (1997)[4] Permitted Dr. Miller to File a Motion for Reconsideration of the Circuit Court's August 14, 1997 Order.*

In his application for certiorari, Dr. Miller contends that the ICA erred in holding that

---

**3.** This court has since held that an order granting a claimant's petition to confirm an arbitration award is an appealable "judgment" under HRS chapter 658. *Kalawaia v. AIG Hawai'i Ins. Co.,* 90 Hawai'i 167, 171, 977 P.2d 175, 179 (1999); *see also Dilsaver v. Association of Apartment Owners of Kona Coffee Villas,* 92 Hawai'i 206, 208–209, 990 P.2d 104, 106–107 (App.1999) (holding that an order that expressly granted a motion to confirm an arbitration award, but failed to explicitly confirm the arbitration award, was a "judgment" under HRS § 658–12). A

document entitled "final judgment," which is filed subsequent to the written order granting a petition to confirm an arbitration award, is mere "surplusage." *See Kalawaia,* 90 Hawai'i at 171, 977 P.2d at 179.

**4.** Hawai'i Rules of Civil Procedure (HRCP) Rule 59(e) (1997) provided in relevant part that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." By order dated December 7, 1999,

HRS § 658–11 barred the circuit court from considering grounds to vacate an arbitration award "by way of a timely motion for reconsideration where the facts that are the basis of the motion for reconsideration were not discovered and were not reasonably available to the moving party within the ten-day period provided by HRS § 658–11." Dr. Miller's contention begs the question whether reconsideration is allowed at all in HRS chapter 658 proceedings. We accepted Dr. Miller's application for certiorari in order to clarify the answer to this underlying question, which was not addressed in the ICA's opinion.

HRS chapter 658, on its face, does not provide for a motion for reconsideration. Although HRCP Rule 59(e) does allow for such a motion, *see e.g., Gossinger v. Association of Apartment Owners of the Regency Ala Wai,* 73 Haw. 412, 425, 835 P.2d 627, 634 (1992); *Baldonado v. Liberty Mut. Ins. Co.,* 81 Hawai'i 403, 408, 917 P.2d 730, 735 (App.1996), HRCP Rule 81(a)(5) (1997) unequivocally provides that the HRCP *shall not* apply to "[a]pplications to a circuit court under [HRS] chapter 658, relating to arbitrations, and proceedings thereon *prior to judgment."* (Emphasis added.) Rules of the Circuit Courts of the State of Hawai'i (RCCH) Rule 31 (1997) [5] governs circuit court proceedings in which the HRCP do not apply, but, akin to HRS chapter 658, RCCH Rule 31 fails to provide for a motion for reconsideration.[6]

■ The entry of the "judgment" within the meaning of HRS chapter 658, however, triggers the applicability of the HRCP. *See* HRCP Rule 81(a)(5). HRS § 658–12 (1993) deems "entry of judgment" to have taken place "[u]pon the granting of an order, confirming, modifying, or correcting an award, the same shall be filed in the office of the clerk of the circuit court and this shall constitute the entry of judgment. An appeal may be taken from such judgment as hereinafter set forth." In other words, a "judgment," for purposes of HRS chapter 658, is entered when the circuit court files its written order confirming, modifying, or correcting an arbitration award with the office of the clerk of the circuit court.[7]

this court amended the rule to require that a motion to alter or amend judgment be *filed,* rather than merely served, within ten days of entry of judgment. The amendment took effect on January 1, 2000.

5. Rules of the Circuit Courts of the State of Hawai'i (RCCH) Rule 31 (1997) provides in relevant part:

> **Proceedings not governed by Hawai'i rules of civil procedure.**
> (a) *Procedure.* Except as provided by statute or by other rules of court, where a civil proceeding is not governed by the Hawai'i Rules of Civil Procedure:
> (1) The proceeding shall be commenced by petition;
> (2) The petition shall be verified by the oath of the petitioner, or someone on his behalf, deposing to the best of his knowledge and belief;
> (3) Service of the petition and order to show cause and any other process or order shall be made as provided by the Hawai'i Rules of Civil Procedure;
> (4) A return to the petition shall be made within the time ordered by the court, and if

it presents an issue of fact shall be supported by oath;
> (5) The court may designate and order that any one or more of the Hawai'i Rules of Civil Procedure shall be applicable in such case.

6. RCCH Rule 31(a)(5) does allow for the circuit court to "designate and order that any one or more of the [HRCP]" are applicable to the proceedings. In this instance, however, the record does not contain any such designation and order.

7. HRS Chapter 658 establishes its own mechanism for correcting technical errors in an arbitration award. Specifically, HRS § 658–10 (1993) provides:

> **Modifying or correcting award.** In any of the following cases, the court may make an order modifying or correcting the award, upon the application of any party to the arbitration:
> (1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing, or property, referred to in the award;
> (2) Where the arbitrators have awarded upon a matter not submitted to them, unless

■ Here, the circuit court filed its order confirming Sousaris's petition to confirm the arbitration award and denying Dr. Miller's petition to vacate the arbitration award on August 14, 1997. Insofar as the August 14, 1997 order confirmed the arbitration award and was filed with the office of the clerk of the circuit court, the August 14, 1997 order qualified as a judgment under HRS § 658–12. Thus, pursuant to HRCP Rule 81(a)(5), the August 14, 1997 order triggered the applicability of the HRCP.

■ Pursuant to HRS § 658–14 (1993),[8] a judgment entered in accordance with HRS § 658–12 enjoys the same force and effect "in all respects" as any other judgment rendered by the circuit court and is also subject to "all the provisions of law" that govern any circuit court judgment. Given that any civil judgment issued by the circuit court would be susceptible to a motion for reconsideration under HRCP Rule 59(e), insofar as the August 14, 1997 order qualifies as a "judgment" under HRS § 658–12, it follows that the August 14, 1997 order would likewise be susceptible to a motion for reconsideration. Therefore, pursuant to HRCP Rule 59(e), a party can move for reconsideration of an order by the circuit court that (1) is filed with the clerk of the circuit court and (2) confirms, modifies, or corrects an arbitration award. *See* HRS § 658–12.

■ In this case, the fact that Dr. Miller did not wait until the circuit court filed its August 14, 1997 order to move for reconsideration under HRCP Rule 59(e) is not fatal for two reasons. First, HRCP Rule 59(e) expressly required that a motion filed pursuant to its provisions be served (and subsequent to January 1, 2000, *filed, see supra* note 4) "not later than 10 days after the entry of the judgment." In construing this language, this court has held that "HRCP [Rule] 59(e) does not require that a motion

be served *after* the entry of judgment; it imposes only an outer time limit on the service of a motion to alter or amend the judgment[.] ... A motion served before the judgment is entered falls within that time constraint." *Saranillio v. Silva*, 78 Hawai'i 1, 7, 889 P.2d 685, 691, *reconsideration denied*, 78 Hawai'i 421, 895 P.2d 172 (1995) (emphasis added). Accordingly, Dr. Miller's August 8, 1997 motion falls squarely within the requirement of being served "not later than 10 days" of the August 14, 1997 order. Thus, Dr. Miller's August 8, 1997 motion is deemed to have been served when the circuit court entered the August 14, 1997 order. *Cf. Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 356, 903 P.2d 48, 52 (1995) (holding that, under Hawai'i Rules of Appellate Procedure Rule 4(a)(2), a premature notice of appeal from a circuit court's announcement of an appealable order denying intervention was deemed timely upon the court's entry of that order); *Makaneole v. Pacific Ins. Co.*, 77 Hawai'i 417, 420, 886 P.2d 754, 757 (1994), *reconsideration denied*, 77 Hawai'i 489, 889 P.2d 66 (1995) (holding that a premature notice of appeal from an announcement of a final order granting summary judgment was deemed timely upon the entry of the order). Second, the circuit court did not pass upon the August 8, 1997 motion until after the August 14, 1997 order had already triggered the applicability of the HRCP. When the circuit court issued its minute order denying the August 8, 1997 motion, HRCP Rule 59(e) was undoubtably applicable.

Having determined that Dr. Miller was entitled to file a motion for reconsideration of the circuit court's August 14, 1997 order, the relevant inquiry now turns to whether Dr. Miller's August 8, 1997 motion was consistent with the express language and policies underlying HRS chapter 658.

it is a matter not affecting the merits of the decision upon the matters submitted;
(3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.
The order may modify and correct the award, so as to effect the intent thereof, and promote justice between the parties.

8. HRS § 658–14 (1993) provides:
    **Effect of judgment.** The judgment entered in accordance with section 658–12 has the same force and effect, in all respects as, and is subject to all the provisions of law relating to, a judgment in an action; and it may be enforced, as if it had been rendered in an action in the court in which it is entered.

B. *Insofar as Dr. Miller's August 8, 1997 Motion Raised a New Statutory Basis for Vacating the Arbitration Award and Proffered Evidence Directed Exclusively to Supporting That New Basis, Dr. Miller's Motion Amounted to an Attempt to Amend His Prior Motion to Vacate the Arbitration Award After the Ten–Day Period in HRS § 658–11 Had Already Expired.*

■ As this court has often stated, "[t]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion." *First Ins. Co. of Hawaii, Ltd. v. Lawrence*, 77 Hawaiʻi 2, 17, 881 P.2d 489, 504, *reconsideration denied*, 77 Hawaiʻi 373, 884 P.2d 1149 (1994) (quoting *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 114, 839 P.2d 10, 27, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992)). Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.[9] *See Amfac, Inc.*, 74 Haw. at 114, 839 P.2d at 27; *Briggs v. Hotel Corp. of the Pacific, Inc.*, 73 Haw. 276, 287 n. 7, 831 P.2d 1335, 1342 n. 7 (1992); *Gossinger v. Association of Apartment Owners of the Regency Ala Wai*, 73 Haw. 412, 426, 835 P.2d 627, 634–35 (1992).

■ The new statutory basis that Dr. Miller raised for vacating the arbitration award in the August 8, 1997 motion, *i.e.*, arbitrator misconduct, and the newly discovered evidence that allegedly supported this basis, *i.e.*, Dr. Peroff's conversation with Quinn, ostensibly fall within the purview of a motion to reconsider. Dr. Peroff would not speak to the lawyers until after the ten-day period set forth in HRS § 658–11 had elapsed and did not return Quinn's telephone calls until August 1, 1997, the day the circuit court orally granted Sousaris's petition to confirm the arbitration award. Because it appears that Dr. Miller could not have otherwise reasonably discovered sufficient grounds to allege arbitrator misconduct prior to Quinn's conversation with Dr. Peroff on August 1, 1997, the alleged misconduct and the evidence supporting that misconduct are matters which could *not* have been raised in the July 16, 1997 petition to vacate or at the August 1, 1997 hearing on the petition. *Cf. American Federation of Teachers v. Rhode Island Board of Regents*, 477 A.2d 104, 105–106 (R.I.1984) (holding that, in the context of reconsideration of a judgment confirming an arbitration award, a motion filed pursuant to Rule 59(e) of the Rules of Civil Procedure for the Superior Court of Rhode Island was properly denied where the movant failed to argue that the motion was based on newly discovered evidence and there was no showing of any manifest error in the judgment).

Allowing Dr. Miller to raise a new ground to vacate the arbitration award after the HRS § 658–11 period has expired, however, would nullify the ten-day period set forth in HRS § 658–11 and do violence to the strong public policy of promoting arbitration as an expeditious and inexpensive means of resolving disputes. *See Arbitration of Bd. of Directors of Ass'n of Apartment Owners of Tropicana Manor and Jeffers*, 73 Haw. 201, 209, 830 P.2d 503, 508 (1992) ("[l]ack of finality would discourage parties from arbitrating their disputes and would contravene the public purpose of arbitration"); *cf. Darcy v. Lolohea*, 77 Hawaiʻi 422, 426, 886 P.2d 759,

---

9. Insofar as we have construed HRCP Rule 59(e) as a vehicle "to allow the parties to *present new evidence and/or arguments* that could not have been presented during the earlier adjudicated motion," *Lawrence*, 77 Hawaiʻi at 17, 881 P.2d at 504 (quoting *Amfac, Inc.*, 74 Haw. at 114, 839 P.2d at 27) (emphasis added), we differ from several federal jurisdictions that construe Federal Rules of Civil Procedure (FRCP) Rule 59(e), on which HRCP Rule 59(e) is patterned, as an improper vehicle to tender *new legal theories* for the first time. *See, e.g., Bally Export Corp. v. Balicar,* *Ltd.*, 804 F.2d 398, 404 (7th Cir.1986); *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986); *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir.1984); *Bull HN Information Systems, Inc. v. Hutson*, 184 F.R.D. 19, 21 (D.Mass.1999) ("[FRCP] Rule 59(e) motions are 'aimed at reconsideration, not initial consideration.'") (quoting *Harley–Davidson Motor Co., Inc. v. Bank of New England*, 897 F.2d 611, 616 (1st Cir.1990)).

763 (App.) (in the context of court annexed arbitration under HRS § 601–20(a)(3) (1993), a "motion under [HRCP] Rule 59 . . ., if granted, would result in a reopening of the arbitration judgment. The filing of a motion to alter or amend destroys the finality for purposes of appeal of any judgment that has been entered") (internal quotation marks and citations omitted), *cert. denied,* 77 Hawai'i 489, 889 P.2d 66 (1994). HRS § 658–11 expressly mandates that notice of a motion to vacate, modify, or correct an award *shall* be served within ten days after the arbitration award is entered and served. *See supra* note 1. Neither the text nor the policy underlying HRS chapter 658 lends support for the use the mechanism of reconsideration as a means to amend a prior motion to vacate an arbitration award. Indeed, employing the reconsideration motion in such a manner would eviscerate any meaning behind the ten-day period provided in HRS § 658–11 by allowing Dr. Miller to effectively serve what amounts to a new petition to vacate the arbitration award well beyond ten days after the July 7, 1997 arbitration award has been made and served. Although sanctioning such a maneuver may arguably encourage arbitrators to strictly adhere to the rules governing arbitration, it would do so at the expense of the express language of HRS § 658–11 and the underlying policy of encouraging arbitration as an efficient means of reaching finality in resolving disputes. Such a price is too high to pay. Thus, we concur with the ICA's holding that, insofar as the August 8, 1997 motion raised a new basis for vacating the arbitration award, the motion amounted to a motion to amend Dr. Miller's prior motion to vacate after the ten-day period set forth in HRS § 658–11 had elapsed, and was therefore untimely. ICA's opinion at 545–546, 993 P.2d at 579–580.

▮ We do not, however, read the ICA's holding as a complete bar from seeking reconsideration of an order confirming, modifying, or correcting an arbitration award. Dr. Miller's August 8, 1997 motion failed because it raised a new statutory basis for vacating the arbitration award after the ten-day period prescribed in HRS § 658–11. To the extent that an HRCP Rule 59(e) motion to reconsider is limited to new *evidence* that (1) supports a statutory basis already raised in a timely motion to vacate under HRS §§ 658–9 and 658–11 and (2) could not have been raised in a petition to vacate nor could have been discovered, despite due diligence, prior to the expiration of the ten-day period in HRS § 658–11, we hold that such a reconsideration motion would not contravene the express notice requirements in HRS § 658–11.[10] *See supra* note 1. Moreover, allowing such a limited motion for reconsideration would harmonize the strong policy of promoting arbitration as an efficient means of resolving disputes with the language in HRS § 658–14 that subjects HRS chapter 658 judgments to "all the provisions of law" that govern any circuit court judgment.

## III. CONCLUSION

Subject to the foregoing clarification, we affirm the ICA's opinion.

---

**10.** We note that HRCP Rule 60(b)(2) (1999) provides another mechanism for claimants to interpose new evidence in their endeavor to alter a final judgment. Specifically, HRCP Rule 60(b)(2) allows claimants to seek relief from a final judgment in light of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under [HRCP] Rule 59(b)[.]" Insofar as HRCP Rule 60(b)(2) and HRCP Rule 59(e) motions are both devices employed to introduce new evidence aimed at altering the judgment, our holding governing HRCP Rule 59(e) motions to reconsider an order confirming an arbitration award applies with equal force to HRCP Rule 60(b)(2) motions tailored to do the same.