121 P.3d 924

**Ronnie–Jean Kuulei TAGUPA, Plaintiff–Appellee,**

v.

**Vincent Peter TAGUPA, Defendant–Appellant.**

**No. 26717.**

Intermediate Court of Appeals of Hawai'i.

Sept. 15, 2005.

On the briefs: Jo Kim, Paauilo, for Defendant–Appellant.

BURNS, C.J., WATANABE and NAKAMURA, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Vincent Peter Tagupa (Vincent) appeals from the Divorce Decree entered on March 22, 2004, in the Family Court of the Third Circuit[1], terminating his marriage to Plaintiff–Appellee Ronnie–Jean Kuulei Tagupa (Ronnie–Jean).

Vincent contends that the family court abused its discretion when it did not grant his (1) motion for reconsideration of the family court's (a) granting of Ronnie–Jean's request for the entry of a decree of divorce and (b) denial of his request for the entry of a decree of annulment, or (2) motion for a new trial, even after being reliably informed that the man to whom Ronnie–Jean was still married to when she purportedly lawfully married Vincent, had been located, was alive, and had been deposed to prove these facts. We agree that the family court erred when it did not grant Vincent a partial new trial. Consequently, we (1) vacate (a) the June 30, 2004 denial of Vincent's April 1, 2004 motion for a

---

1. The Honorable William S. Chillingworth presided.

new trial and (b) parts of the March 22, 2004 Divorce Decree; and (2) remand for a partial new trial. In all other respects, we affirm.

## RELEVANT STATUTES

The Hawaii Revised Statutes (HRS) (Supp. 2004) state, in relevant part, as follows:

**§ 572–1 Requisites of valid marriage contract.** In order to make valid the marriage contract, which shall be only between a man and a woman, it shall be necessary that:

. . . .

(3) The man does not at the time have any lawful wife living and that the woman does not at the time have any lawful husband living;

. . . .

(6) The man and woman to be married in the State shall have duly obtained a license for that purpose from the agent appointed to grant marriage licenses; and

(7) The marriage ceremony be performed in the State by a person or society with a valid license to solemnize marriages and the man and the woman to be married and the person performing the marriage ceremony be all physically present at the same place and time for the marriage ceremony.

. . . .

**§ 572–6 Application; license; limitations.** To secure a license to marry, the persons applying for the license shall appear personally before an agent authorized to grant marriage licenses and shall file with the agent an application in writing. The application shall be accompanied by a statement signed and sworn to by each of the persons, setting forth: the person's full name, date of birth, social security number, residence; their relationship, if any; the full names of parents; and that all prior marriages, if any, have been dissolved by death or dissolution. If all prior marriages have been dissolved by death or dissolution, the statement shall also set forth the date of death of the last prior spouse or the date and jurisdiction in which the last decree of dissolution was entered. Any other information consistent with the standard marriage certificate as recommended by the Public Health Service, National Center for Health Statistics, may be requested for statistical or other purposes, subject to approval of and modification by the department of health; provided that the information shall be provided at the option of the applicant and no applicant shall be denied a license for failure to provide the information. The agent shall indorse on the application, over the agent's signature, the date of the filing thereof and shall issue a license which shall bear on its face the date of issuance. Every license shall be of full force and effect for thirty days commencing from and including the date of issuance. After the thirty-day period, the license shall become void and no marriage ceremony shall be performed thereon.

. . . .

**§ 580–21 Grounds for annulment.** The family court, by a decree of nullity, may declare void the marriage contract for any of the following causes, existing at the time of the marriage:

. . . .

(3) That the husband had an undivorced wife living, or the wife had an undivorced husband living[.]

. . . .

**§ 580–23 Former husband or wife living.** A marriage may be declared null on the ground that one of the parties has an undivorced husband or wife living, on the application of either of the parties during the lifetime of the other, or on the application of the former husband or wife.

**§ 580–24 Allowance for spouse and family.** Every person who is deceived into contracting an illegal marriage with a man or woman having another spouse living, under the belief that he or she was unmarried, may be entitled to a just allowance for the support of the deceived spouse and family out of the property of the deceiving spouse, which the deceived spouse may obtain at any time after action commenced upon application to the family court having jurisdiction. In addition to the allowance, the court may also compel

the defendant to advance reasonable amounts for the compensation of witnesses and other reasonable expenses of trial to be incurred by the plaintiff.

**§ 580–25 Inheritance by children.** The children of such illegal marriage shall be entitled to succeed in the same manner as legitimate children, to all the real and personal estate of both parents in the State.

. . . .

**§ 580–27 Legitimacy in case of annulment.** Upon the annulment of a marriage on account of nonage, lack of mental capacity of either party to consent to the marriage, or of a marriage that is prohibited on account of consanguinity between the parties, or for any other ground specified in section 580–21, the issue of the marriage shall be legitimate.

. . . .

**§ 580–29 No annulment solely on confessions.** No sentence of nullity of marriage shall be pronounced solely on the declarations or confessions of the parties. The court shall, in all cases, require other satisfactory evidence of the facts on which the allegation of nullity is founded.

### RELEVANT PRECEDENT

■ In Hawai'i, living person A's purported marriage to living person C, while living person A is lawfully married to living person B, is void *ab initio*. *See Kienitz v. Sager*, 40 Haw. 1, 2–3 (1953). The same is true in other states. *Fuller v. Fuller*, 33 Kan. 582, 7 P. 241, 243–44 (1885) ("a marriage, where one of the parties at the time has a husband or wife living, is void, absolutely and in all its aspects"); *Kiessenbeck v. Kiessenbeck*, 145 Or. 82, 26 P.2d 58, 60 (1933); *Rodman (Fried) v. Rodman*, 361 S.C. 291, 604 S.E.2d 399, 402 (2004) (no legal distinction between a marriage which is annulled and one terminated by reason of bigamy, as both are void *ab initio*, or "from the inception"); *Ledvinka v. Ledvinka*, 154 Md.App. 420, 840 A.2d 173, 181–82 (2003) (trial court was precluded from granting divorce, rather than annulment, when marriage was void *ab initio* ).

Some states, particularly those that subscribe to a community property regime, will grant a putative spouse, who innocently believed their marriage to be valid, a share of the couple's quasi-marital property. *See In re Marriage of Vryonis*, 202 Cal.App.3d 712, 717–22, 248 Cal.Rptr. 807 (1988); *Garduno v. Garduno*, 760 S.W.2d 735, 738–39 (Tex.App. 1988); *In re Marriage of Himes*, 136 Wash.2d 707, 965 P.2d 1087, 1100 (Wash. 1998). Courts in such states will employ a "good faith" analysis to determine whether either party had reason to believe the marriage might be invalid. *See Vryonis* at 717–22, 248 Cal.Rptr. 807. However, even in cases where a putative spouse is determined to be entitled to a share of the quasi-marital property, the marriage is nonetheless deemed to be void. *See id.*

### BACKGROUND

Prior to September 15, 1989, Ronnie–Jean and Vincent obtained a Hawai'i marriage license and satisfied the requirement specified in HRS § 572–1(6). On September 15, 1989, Ronnie–Jean and Vincent were married in Hawai'i and satisfied the requirement specified in HRS § 572–1(7). Their son was born on March 12, 1990. Their daughter was born on September 23, 1991.

On August 10, 2001, Ronnie–Jean filed a complaint for divorce in the instant case. In it, she alleged, in relevant part, that "[t]he parties are lawfully married to each other." In the Matrimonial Action Information document, she reported that she had been previously married on July 6, 1986, but had been divorced in January of 1987. In other words, she alleged that when she and Vincent were married in Hawai'i on September 15, 1989, she and Vincent satisfied the requirement specified in HRS § 572–1(3).

On April 11, 2002, Vincent filed a Motion for Leave to File Counter–Claim for Annulment; to Terminate Temporary Alimony and to Compel Plaintiff to Produce Exemplified Copy of Divorce Decree. On July 18, 2002, Judge Terrence T. Yoshioka entered the Order Granting Defendant's Motion for Leave to File Counterclaim for Annulment.

On July 18, 2002, Vincent filed a Counterclaim for Annulment requesting:

1. That a decree be entered granting [Vincent's] complaint for annulment, awarding attorney's fees and costs, dividing and distributing the property and allocating the liabilities of the parties, providing for spouse support, all as alleged and as may be appropriate and in accordance with the evidence and the law.

2. That other relief be granted as the court deems proper in this case.

On October 11, 2002, counsel for Ronnie–Jean filed the Certified Copy of the Judgment of Divorce which showed that in Brooklyn, New York, on December 21, 1989, after the marriage of Ronnie–Jean and Vincent in Hawaiʻi on September 15, 1989, Thornton G. Sanders (Sanders) obtained a Judgment for Divorce terminating his marriage to Ronnie–Jean. It stated, in relevant part, as follows:

[Sanders] having duly instituted an action for a judgment of absolute divorce …; and [Ronnie–Jean] having accepted service of the summons and verified complaint; and [Ronnie–Jean] having waived her right to answer the complaint, and it appearing that the parties have entered into a Separation Agreement …, and [Sanders] having requested that the terms of the Separation Agreement dated May 4, 1987 be incorporated, but not merged in any final judgment of this Court, and it further appearing that the parties agreed to place this action on the undefended matrimonial calendar; … and [Sanders] having submitted written proof in support of his application and [Ronnie–Jean] having not opposed said application; . . . .

. . . .

ORDERED, ADJUDGED AND DECREED, that [Sanders] shall have a judgment of divorce as against [Ronnie–Jean], . . .

. . . .

ORDERED, ADJUDGED AND DECREED, that [Ronnie–Jean] shall be entitled to continue to use her maiden name, AKAKA.

On September 18, 2003, in the instant case, Judge William S. Chillingworth presided over the trial. Judge Chillingworth filed his Decision on November 21, 2003, stating, in relevant part, as follows:

The first issue is whether [Vincent] is entitled to prevail on his annulment claim. It is undisputed that at the time the parties were married in Hawaii on September 15, 1989, [Ronnie–Jean's] New York divorce had not been finalized. A New York judgment of divorce dated in December 1989 is in evidence in this case, and [Vincent] seeks an annulment based on that evidence. The applicable section of the Annulment Statute, Ch. 580–21(3), H.R.S., requires proof that one of the parties had an undivorced spouse living at the date of the marriage. Further, Ch. 580–29 requires satisfactory evidence of the facts on which the allegation of nullity is founded. There is no evidence besides the New York decree that [Ronnie–Jean's] former spouse was alive on September 15, 1989. Given the requirements of Ch. 580–29, H.R.S., this court is unable to utilize either a presumption or a failure of burden of proof to establish a material element of an annulment claim. [Vincent's] claim for annulment is denied.

. . . .

[Counsel for Ronnie–Jean] will prepare a divorce decree.

The Divorce Decree was entered on March 22, 2004. It stated, in relevant part, as follows:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. A Divorce Decree is granted to [Ronnie–Jean] and the bonds of matrimony between [Ronnie–Jean] and [Vincent] are hereby dissolved and the parties are restored to the status of single persons, and either party is permitted to marry from and after the effective date of this Divorce Decree.

. . . .

4. Other matters covered by this Divorce Decree are as follows:

a. The Decision signed and filed herein on November 21, 2003 is incorporated herein by reference.

. . . .

c. [Vincent's] claim for annulment is denied.

. . . .

e. Spousal support for [Ronnie–Jean] had been previously awarded on a temporary basis in the amount of $750.00 per month. Spousal support was suspended on April 11, 2002, when the annulment issue was raised. Temporary spousal support is reinstated for the period from April 12, 2002 to September 18, 2003, payable at the rate of $750.00 per month. No prospective spousal support is awarded.

. . . .

g. [Vincent] has been employed with the State of Hawaii and has a retirement account with the State of Hawaii. [Ronnie–Jean] is entitled to a portion of that account based upon the usual *Linson* formula.

h. [Ronnie–Jean] is entitled to receive one-half of the cash value of [Vincent's] life insurance policy as of the date of the filing of the divorce.

On April 1, 2004, Vincent's Motion for Reconsideration or in the Alternative for a New Trial (April 1, 2004 Motion) was filed. This motion was brought pursuant to Hawai'i Family Court Rules (HFCR) Rule 59 (2005). The grounds were that "[t]here was sufficient evidence to support a finding that [Ronnie–Jean] was married to a living man (hereinafter 'Sanders') when she married [Vincent][.]"

On April 16, 2004, in the instant case, Vincent's Motion for HFCR [Rule] 60(b) Relief (April 16, 2004 Rule 60(b) Motion) was filed. This was an alternative to Vincent's April 1, 2004 Motion to cover the possibility that the April 1, 2004 Motion would be denied. This motion failed to recognize that HFCR Rule 60(b) motions are authorized to seek relief "from any or all of the provisions

of a final judgment, order, or proceeding" and this case had not reached the point of such finality because Vincent's April 1, 2004 Motion had not yet been decided. Thus, it was (1) a supplement to Vincent's HFCR Rule 59 motion and/or (2) a premature HFCR Rule 60(b) motion. In an accompanying declaration, counsel for Vincent advised the court that Ronnie–Jean's former spouse Sanders had been located in Virginia and asked the family court for permission to depose him.

On April 22, 2004, Vincent filed Defendant's Ex Parte Motion for Issuance of Commi[s]sion to Take Deposition Upon Written Questions in the State of Virginia. This motion was "made pursuant to Rule 28(a) of the Hawaii Family Court Rules and section 624–24.5, Hawaii Revised Statutes[.]" On April 22, 2004, Judge Chillingworth entered an Order Granting Defendant's Ex Parte Motion for Issuance of Commission to Take Video Deposition Upon Written Questions in the State of Virginia.

On May 4, 2004, Ronnie–Jean filed an ex parte motion for "a Protective Order which orders that the video deposition upon written questions not be had." This motion was "based upon H.R.C.P. Rule 26(c)[.]" One of the grounds asserted was that "[t]he divorce trial is over and [Vincent] has not shown that information or evidence regarding [Sanders] was unavailable to him prior to the trial date." [2] On May 4, 2004, the family court entered an order granting Ronnie–Jean's Ex Parte Motion for Protective Order and ordered "that the deposition upon written questions of Thornton G. Sanders not be had and not take place until further order."

On May 6, 2004, Vincent's Ex Parte Motion to Schedule Deposition was filed. Attached to this motion was a declaration of counsel for Vincent. On that same day, the

**2.** Hawai'i Family Court Rules Rule 60(b)(2) (2005) permits the family court to relieve a party from a final judgment when the party has "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]" The observation by plaintiff-appellee Ronnie–Jean Kuulei Tagupa (Ronnie–Jean) that the evidence showing that, when she and defendant-appellant Vincent Peter Tagupa (Vincent) were married on September 15, 1989, the invalidity of Ronnie–Jean's

marriage to Vincent could have been discovered by due diligence prior to the trial in this matter applies at least as much to Ronnie–Jean as it does to Vincent. It being so simple, Ronnie–Jean should have discovered it before (1) Ronnie–Jean and Vincent applied for and obtained their marriage license, (2) Ronnie–Jean and Vincent were married, and (3) Ronnie–Jean filed and pursued her complaint for divorce alleging that "[t]he parties [Vincent and Ronnie–Jean] are lawfully married to each other."

family court entered an Order Granting Motion stating, in relevant part, as follows:

1. The video deposition of Thornton G. Sanders as allowed in that Defendant's Ex Parte Motion for Issuance of Commissions to Take Video Deposition Upon Written Interrogatories in the State of Virginia, granted in this case on April 22, 2004, shall be held as specified below.

2. [Ronnie–Jean] shall have until May 15, 2004, to serve her cross questions, [Vincent] shall [have until] ten days after service of the cross questions to serve his redirect questions. The deposition may be scheduled on or after June 1, 2004.

On June 1, 2004, counsel for Vincent filed a supplemental declaration stating that an internet search found Sanders residing in Virginia. The deposition of Sanders was taken on June 1, 2004 in Charlottesville, Virginia. The videotape and transcript of the deposition were filed with the family court on June 15, 2004. In them, Sanders, obviously still alive, testified that he was the former husband of Ronnie–Jean and that their divorce was final on December 21, 1989.

On June 16, 2004, Ronnie–Jean's Memorandum in Opposition to Defendant's Motion for Reconsideration or in the Alternative for a New Trial was filed. In it, counsel for Ronnie–Jean erroneously alleged that "a video of said deposition has not been ... filed with the Court" and that Vincent "does not provide any reason or justification as to why this newly discovered evidence could not have been discovered by due diligence prior to the trial in this matter."

There is no evidence in the record on appeal that the family court filed any document deciding Vincent's April 1, 2004 Motion.

### RELEVANT RULES AND THEIR APPLICATION IN THIS CASE

Hawai'i Family Court Rules Rule 59 (2005) states, in relevant part, as follows:

**NEW TRIALS; RECONSIDERATION OR AMENDMENT OF JUDGMENTS AND ORDERS.**

**(a) Grounds.** A new trial may be granted to all or any of the parties and on all or part of the issues for good cause shown. On a motion for a new trial, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law, or make new findings and conclusions, and direct the entry of a new judgment.

. . . .

**(e) Motion to reconsider, alter or amend a judgment or order.** Except as otherwise provided by HRS section 571–54, a motion to reconsider, alter or amend the judgment or order shall be filed not later than 10 days after entry of the judgment or order. Excepting motions for reconsideration from proceedings based upon HRS sections 571–11(1) [child law violator], (2) [child status offender], (6) [judicial consent to child's decision] and (9) [Child Protective Act], all motions for reconsideration shall be non-hearing motions. At its discretion, the court may set the matter for a hearing. Responsive pleadings to a motion for reconsideration shall be filed no later than 10 days after filing of the motion to reconsider, alter or amend the judgment or order.

**(f) Entry of judgment.** Unless otherwise ordered by the court, the filing of the judgment in the office of the clerk constitutes the entry of the judgment, and the judgment is not effective before such entry.

Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(a)(3) (2005) states, in relevant part, as follows:

TIME TO APPEAL AFFECTED BY POST-JUDGMENT MOTIONS. If, not later than 10 days after entry of judgment, any party files a motion that seeks to reconsider, vacate, or alter the judgment, or seeks attorney's fees or costs, the time for filing the notice of appeal is extended until 30 days after entry of an order disposing of the motion; provided, that the failure to dispose of any motion by order entered upon the record within 90 days after the date the motion was filed shall constitute a denial of the motion.

The notice of appeal shall be deemed to appeal disposition of all post-judgment mo-

tions that are filed within 10 days after entry of judgment.

The 90–day period shall be computed as provided in Rule 26.

On July 23, 2004, Vincent's notice of appeal was filed. This appeal was assigned to this court on February 9, 2005.

## APPELLATE JURISDICTION

The May 6, 2004 Order Granting Motion that granted Vincent's May 6, 2004 Ex Parte Motion to Schedule Deposition indicated that the family court was in fact contemplating the possibility of reconsidering its March 22, 2004 Divorce Decree. On the other hand, the family court failed to file an order granting or denying Vincent's April 1, 2004 Motion. Therefore, pursuant to HRAP Rule 4(a)(3), this motion was deemed denied on June 30, 2004, and the March 22, 2004 Divorce Decree, thereupon, became final and appealable.

Vincent's April 16, 2004 Rule 60(b) Motion was not an HFCR Rule 60(b) motion until the March 22, 2004 Divorce Decree became final and appealable on June 30, 2004. Until then, Vincent's April 16, 2004 Motion for HFCR [Rule] 60(b) Relief was no more than a supplement to his April 1, 2004 Motion and was deemed denied on June 30, 2004. If and to the extent that it thereafter survived as an HFCR Rule 60(b) motion, it had no impact on the finality and appealability of the March 22, 2004 Divorce Decree on June 30, 2004.

## STANDARD OF REVIEW

■ [T]he purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion. Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

*Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd.,* 100 Hawai'i 97, 110, 58 P.3d 608, 621 (2002) (quoting *Sousaris v. Miller,* 92 Hawai'i 505, 513, 993 P.2d 539, 547 (2000)). We review a "trial court's ruling on a motion for reconsideration ...

under the abuse of discretion standard." *Ass'n of Apartment Owners of Wailea Elua,* 100 Hawai'i at 110, 58 P.3d at 621. An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

## DISCUSSION

■ When, on October 11, 2002, counsel for Ronnie–Jean filed the Certified Copy of the Judgment of Divorce showing that, in Brooklyn, New York, on December 21, 1989, after the marriage of Ronnie–Jean and Vincent in Hawai'i on September 15, 1989, Sanders obtained a Judgment for Divorce terminating his marriage to Ronnie–Jean, Ronnie–Jean thereby presented undisputed evidence (1) that Sanders was alive both on December 21, 1989, and three months earlier on September 15, 1989, and (2) that, when Ronnie–Jean married Vincent on September 15, 1989, Sanders was her living lawful husband and Ronnie–Jean (and Vincent) did not satisfy the requirement of HRS § 572–1(3). Thereupon, the burden shifted to Ronnie–Jean to prove that, when Ronnie–Jean married Vincent on September 15, 1989, Sanders was not her living lawful husband and that Ronnie–Jean (and Vincent) satisfied the requirement of HRS § 572–1(3).

Notwithstanding the Certified Copy of the Judgment of Divorce, the resulting shift of the burden of proof to Ronnie–Jean, and Ronnie–Jean's failure to satisfy this burden of proof, the family court, in its November 21, 2003 Decision, and its March 22, 2004 Divorce Decree, decided that Ronnie–Jean was entitled to prevail on her divorce claim and Vincent was not entitled to prevail on his annulment claim because

[t]he applicable section of the Annulment Statute, Ch. 580–21(3), H.R.S., requires proof that one of the parties had an undivorced spouse living at the date of the marriage. Further, Ch. 580–29 requires satisfactory evidence of the facts on which the allegation of nullity is founded. There is no evidence besides the New York de-

cree that [Ronnie–Jean's] former spouse was alive on September 15, 1989. Given the requirements of Ch. 580–29, H.R.S., this court is unable to utilize either a presumption or a failure of burden of proof to establish a material element of an annulment claim. [Vincent's] claim for annulment is denied.

In making this decision, the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant. This is because the Certified Copy of the Judgment of Divorce was evidence and, if not contradicted, proof that Ronnie–Jean's former spouse was alive on September 15, 1989.

Moreover, on June 1, 2004, while Vincent's April 1, 2004 Motion was being considered, counsel for Vincent filed a supplemental declaration stating that an internet search found Sanders residing in Virginia. The deposition of Sanders was taken on June 1, 2004, in Charlottesville, Virginia. During that deposition, Sanders testified that he was the former husband of Ronnie–Jean, demonstrating that he was still alive.

When, on June 15, 2004, the videotape and transcript of the deposition of Sanders taken on June 1, 2004 in Charlottesville, Virginia, were filed in this case, the family court was aware of this evidence that Vincent and Ronnie–Jean had not been lawfully married to each other as was alleged in the complaint. Notwithstanding this information, the family court failed to decide Vincent's April 1, 2004 Motion and allowed it to be deemed denied on June 30, 2004.

## CONCLUSION

Accordingly, we vacate the following parts of the March 22, 2004 Divorce Decree:

1. A Divorce Decree is granted to [Ronnie–Jean] and the bonds of matrimony between [Ronnie–Jean] and [Vincent] are hereby dissolved and the parties are restored to the status of single persons, and either party is permitted to marry from and after the effective date of this Divorce Decree.

. . . .

4. Other matters covered by this Divorce Decree are as follows:

a. The Decision signed and filed herein on November 21, 2003 is incorporated herein by reference.

. . . .

c. [Vincent's] claim for annulment is denied.

. . . .

e. Spousal support for [Ronnie–Jean] had been previously awarded on a temporary basis in the amount of $750.00 per month. Spousal support was suspended on April 11, 2002, when the annulment issue was raised. Temporary spousal support is reinstated for the period from April 12, 2002 to September 18, 2003, payable at the rate of $750.00 per month. No prospective spousal support is awarded.

. . . .

g. [Vincent] has been employed with the State of Hawaii and has a retirement account with the State of Hawaii. [Ronnie–Jean] is entitled to a portion of that account based upon the usual *Linson* formula.

h. [Ronnie–Jean] is entitled to receive one-half of the cash value of [Vincent's] life insurance policy as of the date of the filing of the divorce.

We vacate the June 30, 2004 denial of the April 1, 2004 Motion for Reconsideration or in the Alternative for a New Trial. We remand for a partial new trial on the issues presented by the vacated parts of the March 22, 2004 Divorce Decree. At this partial new trial, the family court shall receive into evidence the videotape and the transcript of the June 1, 2004 deposition of Thornton G. Saunders in Charlottesville, Virginia. After both parties have introduced any additional relevant and admissible evidence they seek to introduce, and have presented their arguments, the family court shall, in the light of this opinion, decide the issues presented by the vacated parts of the March 22, 2004 Divorce Decree and any other relevant and

material issues presented by the partial new trial.

In all other respects, we affirm.

