188 P.3d 807

**John DOE, Plaintiff–Appellee,**

v.

**Jane DOE, Defendant–Appellant.**

**No. 27490.**

Intermediate Court of Appeals of Hawai'i.

June 30, 2008.

See also 2004 WL 2980057.

Blake T. Okimoto, Anne M. Kaya, Honolu-
lu, on the briefs, for Defendant–Appellant.

Charles T. Kleintop, Robert T. Nakatsuji (Stirling & Kleintop), Honolulu, on the briefs, for Plaintiff–Appellee.

WATANABE, Presiding Judge, FOLEY and FUJISE, JJ.

Opinion of the Court by FOLEY, J.

This appeal arises out of a divorce proceeding in the Family Court of the First Circuit (family court) between Defendant–Appellant Jane Doe (Defendant or Mother) and Plaintiff–Appellee John Doe (Plaintiff or Father) and custody issues involving the daughter (Daughter) of Mother and Father. Mother appeals from the following two orders [1]:

(1) The "Order Re: Plaintiff's Motion & Affidavit for Post Decree Relief Filed 11/8/04 and Defendant's Motion to Unseal File FC–D 95–2875 Filed 11/8/04 and Plaintiff's Motion & Affidavit for Post Decree Relief Filed 1/12/05" (Order), filed on August 10, 2005. The family court, *inter alia*, (a) ordered Mother to resign from her position as a Team Parent/Classroom Mom (team parent) at Daughter's school (School), pursuant to the "Stipulated Order Resolving Issues Raised in Plaintiff's December 24, 2001 Motion for Post–Decree Relief and Defendant's January 22, 2002 Affidavit of [Mother] in Opposition to Plaintiff's Motion for Post–Decree Relief, Other Related Issues, and Issues Pending in Other Courts" filed March 11, 2003 (Stipulated Order); (b) ordered Mother and Father (collectively, the parties) to consult with School counselors to determine whether Daughter should attend summer school at School; and (c) granted in part and denied in part Mother's November 8, 2004 Motion to Unseal File FC–D 95–2875 (Motion to Unseal).

(2) The "Order Denying Defendant's Motion for Partial Reconsideration of Order Re: Plaintiff's Motion & Affidavit for Post Decree Relief Filed 11/8/04 and Defendant's Motion to Unseal File FC–D 95–2875 Filed 11/8/04 & Plaintiff's Motion & Affidavit for Post Decree Relief Filed 1/12/05 and/or New Trial" (Order Denying Motion for Partial Reconsideration), filed on October 14, 2005.

[1]. The Honorable Karen M. Radius presided.

On July 24, 1996, the family court entered a Divorce Decree between the parties. On November 8, 2004, Father filed a Motion and Affidavit for Post Decree Relief (November 8, 2004 Motion) and Mother filed her Motion to Unseal. On January 12, 2005, Father filed another Motion and Affidavit for Post Decree Relief (January 12, 2005 Motion). The family court entered its Order on August 10, 2005, and Mother timely appealed from the Order.

On August 25, 2005, Mother filed a "Motion for Partial Reconsideration of Order Re: Plaintiff's Motion & Affidavit for Post Decree Relief Filed 11/8/04 and Defendant's Motion to Unseal File FC–D 95–2875 Filed 11/8/04 and Plaintiff's Motion & Affidavit for Post Decree Relief Filed 1/12/05 and/or New Trial" (Motion for Partial Reconsideration). The family court filed its Order Denying Motion for Partial Reconsideration on October 14, 2005, and Mother filed a timely Amended Notice of Appeal from that order.

Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 10(f), Mother requested that the family court enter findings of fact (FOFs) and conclusions of law (COLs). The family court entered its Findings of Fact and Conclusions of Law (FOFs/COLs) on November 8, 2005.

On appeal, Mother argues that the family court erred by denying her Motion for Partial Reconsideration and, therefore, the family court's FOFs 51 and 52 are erroneous and its COLs 28 and 29 are wrong for the following reasons:

(1) The family court's FOFs 4, 5, 6, 7, 8, 9, 10, 11, 12, and 25 are erroneous and COLs 7 and 8 are wrong because (a) Mother was not a team parent during the 2004–2005 school year and (b) although the parties signed the Stipulated Order, which provided that neither parent would be a team parent, the parties did not agree *on the record* to bar each other from being a team parent.

(2) The family court's FOFs 35 and 36 are erroneous and COLs 16 and 18 are wrong because summer school was an extracurricular activity.

(3) The family court's FOFs 41, 42, 43, 45, 46, 47, 48, 49, and 50 are erroneous and COLs 22, 24, 26, and 27 are wrong because (a) ordering that the court files (record) remain confidential was not necessary and (b) the family court's restrictions on Mother's ability to access the record in this case were overly burdensome.

Mother also raises as points of error that FOFs 14, 15, 17, 18, 19, 23, 24, 31, 33, 39, and 40 are clearly erroneous.

Mother asks this court to vacate the challenged orders and remand this case for a rehearing.

## I.

In its FOFs/COLs, the family court set forth the following relevant FOFs and COLs:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. PERTINENT BACKGROUND.

. . . .

[In his November 8, 2004 Motion, Father] argued that: . . . [Mother] volunteered as a "team parent" in violation of prior court orders; . . . [and] [Daughter] should be able to pursue her extracurricular activities during the summer of 2005 rather than attending summer school[.]

Also on November 8, 2004, [Mother] filed [the Motion to Unseal] in which she claimed that the [record] in the instant case was "sealed" and requested that the Court "unseal" the [record].

. . . [In his January 12, 2005 Motion, Father] asked the Court to grant him immediate relief on . . . issues raised in his November 8, 2004 Motion.

[Father] argued that: . . . the issue of [Mother's] volunteer activities as a "team parent" needed to be addressed immediately because [Mother] was blatantly violating the orders of the Court; . . . and . . . the issue of whether [Daughter] would have to attend summer school was an issue that needed to be addressed immediately because [Daughter] and the parties needed to make appropriate arrangements.

. . . .

On April 8, 2005, [the November 8, 2004 Motion], [the Motion to Unseal], and [the January 12, 2005 Motion] came on for hearing at a Short Trial before the Honorable KAREN M. RADIUS. At the Short Trial, both [Mother] and [Father] presented extensive testimony. The Court also received thirty (30) exhibits into evidence.

. . . .

Following the Short Trial, the Court took the matter under advisement.

On August 10, 2005, the Court entered its [Order].

On August 22, 2005, [Mother] submitted to the Court [the Motion for Partial Reconsideration]. This Motion was eventually filed by the Court on August 25, 2005.

On September 2, 2005, [Mother's] [Motion for Partial Reconsideration] was served on [Father] through his attorneys.

On September 9, 2005, [Mother] filed her Notice of Appeal from the [Order].

On September 12, 2005, [Father] filed Plaintiff's Memorandum in Opposition to [Mother's] [Motion for Partial Reconsideration].

On October 14, 2005, the Court entered its [Order Denying Motion for Partial Reconsideration].

### II. FINDINGS OF FACT.

After carefully considering all of the evidence presented and admitted at the April 8, 2005 Short Trial and based on the credible evidence before the Court and the records and files herein, the Court enters the following Findings of Fact:

. . . .

2. The parties had one (1) child together: [Daughter], born . . . 1992.

3. The parties were divorced on July 24, 1996.

*[Mother's] Activities as a Team Parent/Classroom Mom*

4. On March 11, 2003, the Court entered [the Stipulated Order][.]

5. Paragraph 11 of the [Stipulated Order] governs the parties' attendance at and involvement in [Daughter's] significant events.

6. Paragraph 11 of the [Stipulated Order] provides, in pertinent part, that "[n]either parent shall volunteer as a team parent or coach or participate in any other capacity in a significant event."

7. On February 9, 2004, this Court (the Honorable BODE A. UALE) issued a Decision and Order (hereinafter "the February 9, 2004 Decision and Order") in which [Mother] was ordered to relinquish her role as a "classroom mom."

8. Paragraph 3 of the February 9, 2004 Decision and Order stated: "As to the issue of [Mother] serving as Classroom mom, the Court acknowledges the time and commitment it takes to serve in such a capacity. However, based on the March 11, 2003 order of the Court, the Court rules that [Mother] must relinquish that role."

9. Although the February 9, 2004 Decision and Order was appealed by [Mother] in S.C. No. 26422, only the award of attorney's fees and costs related to the Decision and Order was stayed pending [Mother's] appeal. The underlying order prohibiting her from serving as a "classroom mom" was not stayed.

10. A "team parent" is, for all practical purposes, the equivalent of a "classroom mom." A "team parent" serves the same function and performs the same duties as a "classroom mom." The term "team parent," not "classroom mom," is used in the higher grades at [School].

11. Under paragraph 11 of the [Stipulated Order], each party is specifically prohibited from volunteering as a "team parent."

12. [Mother] volunteered to serve as a "team parent" sometime during the fall semester of 2004. [School] was short of volunteers to be "team parents" for [Daughter's] class so [Mother] agreed to serve in this role, in violation of the [Stipulated Order].

*Injunction Prohibiting [Mother] From Discussing This Divorce Case and Matters Regarding [Daughter].*

. . . .

14. In her testimony before the [Hawai'i State Senate's Committee on Human Services], [Mother] disclosed facts about this divorce case and matters regarding [Daughter].

15. Also in her testimony before the Committee, [Mother] identified [Father] and [Daughter] by name, stated that [Daughter] attends [School], called [Father] a "wealthy ... Estate Trustee," stated that [Father] "will inherit 20 million dollars in a few years" in addition to "approximately 23 million dollars" in commissions, stated that [Father] has "collected million dollar fees" since 1982, and stated [the area where Father lives].

. . . .

*Indemnification of Mental Health Providers.*

17. Paragraph 5(a) on page 11 of the [Stipulated Order] states: "[Father] shall have full and exclusive decision-making authority in the selection of a mental health professional(s) for [Daughter]."

18. Paragraph 1(a) of the February 4, 2004 Order Re: Plaintiff's Motion and Affidavit for Post–Decree Relief Filed October 31, 2003 (hereinafter "the February 4, 2004 Order") states: "[Father] shall have full and exclusive decision-making authority in the selection of a counselor(s) for [Daughter]."

19. Paragraph 1(a) of the February 4, 2004 Order also states: "[Mother] will affirmatively support [Dr. LEHRKE's] relationship with [Daughter]."

. . . .

23. However, in a letter dated May 26, 2004, [Mother] withdrew her support for Dr. LEHRKE's professional relationship with [Daughter], citing her appeal in S.C. No. 25760.

24. On September 13, 2004, Dr. LEHRKE sent a letter addressed to the Presiding Judge stating that she understood [Mother's] May 26, 2004 letter to be a revocation of her support for Dr. LEHRKE's professional relationship with [Daughter]. Dr. LEHRKE stated that she could not provide further services to [Daughter] unless and until [Mother] in fact supported Dr. LEHRKE's counseling relationship with [Daughter].

25. On December 23, 2004, the Hawai'i Supreme Court issued a Memorandum Opinion in S.C. No. 25760. In its Memorandum Opinion, the Hawai'i Supreme Court vacated two provisions of the [Stipulated Order] that were unrelated to the current proceedings and affirmed the [Stipulated Order] in all other respects.

. . . .

*Expungement of Police Records.*

. . . .

31. [Mother] never provided any evidence that she did what her attorney had represented she was going to do [i.e., withdraw her complaint to police that Father had committed a law violation and request police to expunge the complaint, if possible].

. . . .

33. The expungement process exists to adjust arrest and conviction records. Statements to the police cannot be expunged.

*[Daughter's] Summer School.*

34. Paragraph 5 on page 15 of the [Stipulated Order] states: "[The parties] shall make educational decisions for [Daughter] by mutual agreement. If they are unable to agree, they shall jointly seek advice and counsel from [School] counselor(s)."

35. Summer school is an educational decision. Even if a particular class is more in the nature of an "elective" subject than a "core" subject, it is still a class at school and therefore an educational matter.

36. Summer school is not an extracurricular activity. Extracurricular activities are activities such as sports, clubs, and music groups.

*Access to the [Record] in This Case.*

37. On September 16, 1996, this Court entered an Order Granting Request to Mark File "Confidential" (hereinafter "the September 16, 1996 Order").

38. No orders have ever been entered in this case "sealing" the [record].

39. Attorneys are officers of the Court and are accountable for their actions if they tamper with documents in the [record].

40. *Pro se* litigants are not officers of the Court.

41. Because Family Court cases are often highly emotional, *pro se* litigants may be tempted to engage in improper conduct due to their close personal involvement in their cases.

42. Particular aspects of the instant case justify caution with respect to access to the [record]. This case has been highly litigated since 1996 as the parties agree on very little with respect to [Daughter].

43. Limiting access to the [record] to [Mother's] licensed Hawai'i attorney or an attorney representing her *pro hac vice*, under certain conditions, will ensure access to the [record] only by persons formally connected to the litigation in this case. Persons with no formal connection to the litigation in this case will be denied access to the [record].

44. In the future, should [Mother] be representing herself *pro se*, she should have access to the [record] under certain conditions.

45. As late as January 2003, pleadings were filed under seal and placed in the confidential cabinet in the . . . Estate probate and equity matters[.]

46. While reports and other matters in the . . . Estate probate matter no longer appear to be filed under seal, the Mary Roe Trust matter, . . ., remains confidential.

47. The Mary Roe Trust matter is closely related to the instant case. In fact, a number of issues in the [Stipulated Order] and in the appeal in S.C. No. 25760 involved the Mary Roe Trust matter.

48. The [record] in the instant case contains sensitive information regarding both parties, but even more importantly, regarding [Daughter].

49. Disclosure of this information could not only be embarrassing to the parties and [Daughter], but could create a risk to [Daughter's] personal safety by making her a kidnapping target.

50. It is in [Daughter's] best interests that the [record] in this instant case remain confidential.

*[Mother's] [Motion for Partial Reconsideration].*

51. [Mother] failed to show good cause to warrant the Court to reconsider its [Order].

52. [Mother] failed to show good cause to warrant the Court to grant her a new trial.

### III. CONCLUSIONS OF LAW

. . . .

*[Mother's] Activities as a Team Parent/Classroom Mom.*

7. Pursuant to paragraph 11 of the [Stipulated Order] and paragraph 3 of the February 9, 2004 Decision and Order, [Mother] is prohibited from serving as a "team parent" or "classroom mom" at [School].

8. [Mother] shall therefore resign from her activities as a "team parent" and/or "classroom mom."

. . . .

*[Daughter's] Summer School.*

16. Whether or not [Daughter] should attend summer school is an educational decision.

17. Pursuant to paragraph 5 on page 15 of the [Stipulated Order], educational decisions for [Daughter] shall be made by mutual agreement of the parties. If the parties are unable to agree, they shall jointly seek advice and counsel from [School] counselor(s).

18. Given the parties' disagreement over summer school, they shall consult with [School] counselors to determine what is in [Daughter's] best interests regarding summer school.

19. The Court will not make an order regarding summer school in the future (after the summer of 2005).

*Access to the [Record] in This Case.*

20. The [record] in this case is marked "confidential" pursuant to this Court's September 16, 1996 Order.

21. The [record] in this case is not "sealed."

22. [Mother] may have access to the [record] in this case through a licensed Hawai'i attorney or other attorney admitted *pro hac vice* to represent her so long as: (a) the attorney has filed an [a]ppearance in this case or other pleadings on behalf of [Mother] indicating that said attorney represents [Mother], or (b) the attorney has written consent, signed by [Mother], to review the [record] in this case.

23. The attorney who gains access to the [record] as provided above shall be charged the current rate per page to make copies of any requested page from the [record].

24. In the future, should [Mother] be representing herself *pro se*, she shall have access to the [record] only if she is accompanied by a Family Court staff person at a time arranged between the Family Court staff and herself.

25. [Mother] shall be charged the current rate per page to make copies of any requested page from the [record].

26. It is in [Daughter's] best interests that the [record] in the instant case remain confidential.

27. The [record] in the instant case shall remain confidential for at least as long as the Mary Roe Trust matter ... remains confidential.

*[Mother's] [Motion for Partial Reconsideration].*

28. [Mother] failed to show good cause to warrant the Court to reconsider its [Order].

29. [Mother] failed to show good cause to warrant the Court to grant her a new trial.

(Bracketed material denotes changes to FOFs/COLs for continuity.)

### II.

#### A. Family Court Decisions

█ Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family

court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

*Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting *In re Doe*, 95 Hawai'i 183, 189–90, 20 P.3d 616, 622–23 (2001)).

### B. Motion for Reconsideration

The purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion. Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding. We review a trial court's ruling on a motion for reconsideration under the abuse of discretion standard. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Tagupa v. Tagupa*, 108 Hawai'i 459, 465, 121 P.3d 924, 930 (App.2005) (internal quotation marks, citations, brackets, and ellipsis omitted).

### C. Findings of Fact

The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Fisher*, 111 Hawai'i at 46, 137 P.3d at 360.

### D. Conclusions of Law

A COL is not binding upon an appellate court and is freely reviewable for its correctness. This court ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

*Chun v. Bd. of Trustees of the Employees' Ret. Sys. of the State of Hawai'i*, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and brackets omitted) (quoting *Allstate Ins. Co. v. Ponce*, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)).

### E. Constitutional Questions

"It is well settled that constitutional questions of law are reviewed *de novo* under the right/wrong standard." *Doe v. Doe*, 116 Hawai'i 323, 326, 172 P.3d 1067, 1070 (2007).

### III.

Mother contends the family court erred by denying her Motion for Partial Reconsideration and that FOFs 51 and 52 are erroneous and COLs 28 and 29 are wrong.

FOFs 51 and 52 provide:

*[Mother's] [Motion for Partial Reconsideration].*

51. [Mother] failed to show good cause to warrant the Court to reconsider its [Order].

52. [Mother] failed to show good cause to warrant the Court to grant her a new trial.

COLs 28 and 29 provide:

*[Mother's] [Motion for Partial Reconsideration].*

28. [Mother] failed to show good cause to warrant the Court to reconsider its [Order].

29. [Mother] failed to show good cause to warrant the Court to grant her a new trial.

### A. Team parent

Mother maintains the family court's FOFs/COLs pertaining to paragraph 11 of the Stipulated Order, which restricted either parent

from volunteering "as a team parent or coach or participat[ing] in any other capacity in a significant event," are erroneous and wrong, respectively, because (a) there was no evidence in the record that Mother had volunteered or served as a team parent at the time Father filed his November 8, 2004 Motion and (b) the parties had not agreed *on the record* to bar each other from being a team parent.

FOFs 4, 5, 6, 7, 8, 9, 10, 11, and 12 provide:

*[Mother's] Activities as a Team Parent/Classroom Mom.*

4. On March 11, 2003, the Court entered [the Stipulated Order][.]

5. Paragraph 11 of the [Stipulated Order] governs the parties' attendance at and involvement in [Daughter's] significant events.

6. Paragraph 11 of the [Stipulated Order] provides, in pertinent part, that "[n]either parent shall volunteer as a team parent or coach or participate in any other capacity in a significant event."

7. On February 9, 2004, this Court (the Honorable BODE A. UALE) issued a Decision and Order (hereinafter "the February 9, 2004 Decision and Order") in which [Mother] was ordered to relinquish her role as a "classroom mom."

8. Paragraph 3 of the February 9, 2004 Decision and Order stated: "As to the issue of [Mother] serving as Classroom mom, the Court acknowledges the time and commitment it takes to serve in such a capacity. However, based on the March 11, 2003 order of the Court, the Court rules that [Mother] must relinquish that role."

9. Although the February 9, 2004 Decision and Order was appealed by [Mother] in S.C. No. 26422, only the award of attorney's fees and costs related to the Decision and Order was stayed pending [Mother's] appeal. The underlying order prohibiting her from serving as a "classroom mom" was not stayed.

10. A "team parent" is, for all practical purposes, the equivalent of a "classroom mom." A "team parent" serves the same function and performs the same duties as a "classroom mom." The term "team parent," not "classroom mom," is used in the higher grades at [School].

11. Under paragraph 11 of the [Stipulated Order], each party is specifically prohibited from volunteering as a "team parent."

12. [Mother] volunteered to serve as a "team parent" sometime during the fall semester of 2004. [School] was short of volunteers to be "team parents" for [Daughter's] class so [Mother] agreed to serve in this role, in violation of the [Stipulated Order].

COLs 7 and 8 provide:

*[Mother's] Activities as a Team Parent/Classroom Mom.*

7. Pursuant to paragraph 11 of the [Stipulated Order] and paragraph 3 of the February 9, 2004 Decision and Order, [Mother] is prohibited from serving as a "team parent" or "classroom mom" at [School].

8. [Mother] shall therefore resign from her activities as a "team parent" and/or "classroom mom."

### 1. Factual basis for Father's allegation

Mother denies that she was a team parent at the time Father filed his November 8, 2004 Motion. Further, she alleges that Father did not meet his burden of proof with regard to his allegation that Mother held such a position at the time he filed the motion because his allegation was based only on his secretary's telling him that Mother had agreed to be team parent. Mother argues that in this regard, Father violated Hawai'i Family Court Rules (HFCR) Rule 11, which provides in relevant part:

Rule 11. SIGNING OF PLEADINGS, MOTIONS, AND OTHER PAPERS; SANCTIONS. Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, mo-

tion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is *well grounded in fact and is warranted by existing law or a good faith argument* for the extension, modification, or reversal of existing law, and that it is *not interposed for any improper purpose, such as to harass* or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(Emphases added.)

At the April 8, 2005 trial, Mother testified that she was not a team parent for the 2004–2005 school year. Father testified that he called the Parent/Faculty Association at School to ask whether Mother was acting as team parent for the 2004–2005 academic year, but "was unable to complete the call." He asked his secretary to find out who were the team parents at School if someone from the Parent/Faculty Association were to call back. His secretary later told him she had learned that one of the parents had asked Mother to be a team parent because School was short of volunteers and Mother had agreed to do so.

Mother argues on appeal that Father's testimony that his secretary heard from an unknown person that Mother was acting as team parent was hearsay, which the family court should not have admitted into evidence.

At trial, the family court, over Mother's objection, allowed Father's attorney to present Father's testimony as an offer of proof. With regard to Father's allegation that Mother had acted as team parent, the following discussion ensued:

[Father's attorney]: ... [Father] would testify that clear orders in this case are—especially the [Stipulated Order] that [Mother]—either [sic] party can be a team

parent for [Daughter]. He would testify that, in fact, even after Judge Uale confirmed this in his decision and order of February 9th, 2004, and in his [FOFs] filed on April 12, 2004, that [Mother] again, last fall, acted as a team parent—

[Mother's attorney]: Objection.

[Father's attorney]:—to [Daughter].

[Mother's attorney]: Objection, Your Honor. The basis for that allegation would be hearsay.

THE COURT: Court's going to take it as his understanding. Whether it's true or not, I don't know. You can—

[Mother's attorney]: He just had an understanding.

THE COURT: That's what he understands, is that [Mother] has (indiscernible) signed up to be team parent.

Later, at trial, when Mother's attorney began to ask Father whether Father had a factual basis for his allegation that Mother was a team parent, Mother's attorney objected to Father's response:

Q. [Mother's attorney]: As a matter of fact, [Father], there is no factual basis upon which [Mother] is a team parent for [Daughter's] class at [School]; is that—

A. [Father]: My secretary, ..., informed me that the—

[Mother's attorney]: Objection, Your Honor. Hearsay.

[Father's attorney]: He asked the question, Your Honor.

[Father]: What I had heard.

THE COURT: Okay. You [Mother's attorney] asked what's his basis for understanding that she may be a team parent, so he can answer what's his basis.

[Father]: That there were—that [School] was short of volunteers, and one of the other parents had asked [Mother] to help and [Mother] had agreed to help.

According to Hawaii Rules of Evidence (HRE) Rule 801, " '[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." According to HRE Rule 802, hearsay is generally not admissible. Fa-

ther's statement that his secretary said someone told her Mother was acting as a team parent was double hearsay. The statement was offered to prove that Mother was acting as team parent.[2] Therefore, the family court erred in admitting this hearsay evidence over Mother's objection. Without this inadmissible hearsay evidence, FOF 12 is erroneous and COL 8 is wrong.

### 2. Validity of paragraph 11

■ Mother claims that paragraph 11 of the Stipulated Order was vacated by the Hawaiʻi Supreme Court in its Memorandum Opinion in No. 25760 filed on December 23, 2004. She argues that the supreme court vacated all of the provisions in the Stipulated Order to which she had not agreed, including paragraph 11.

Related to this point is Mother's contention that FOF 25 is clearly erroneous. That FOF provides:

25. On December 23, 2004, the Hawaiʻi Supreme Court issued a Memorandum Opinion in S.C. No. 25760. In its Memorandum Opinion, the Hawaiʻi Supreme Court vacated two provisions of the [Stipulated Order] that were unrelated to the current proceedings and affirmed the [Stipulated Order] in all other respects.

However, Mother's interpretation of the Memorandum Opinion is incorrect. The opinion vacated the Stipulated Order on two matters only—changes to the Mary Roe Trust and letters sent to third parties—and affirmed the Stipulated Order in all other respects.

### 3. Result

The family court's FOFs 4, 5, 6, 7, 8, 9, 10, 11, and 25 are not clearly erroneous and COL 7 is not wrong. However, FOF 12 is erroneous and COL 8 is wrong.

### B. Whether summer school was "extracurricular"

■ Mother argues that FOFs 35 and 36 are erroneous and COLs 16 and 18 are

---

2. It was not hearsay, however, to show that Father's allegation that Mother was acting as a

wrong because summer school was an extracurricular activity for Daughter.

The Stipulated Order provided in relevant part:

5. *Specific Areas of Decision–Making for Parents.*

. . . .

(b) *[Daughter's] Non-[School] Extracurricular Activities.* [Father] shall have full and exclusive decision-making authority over [Daughter's] non-[School] extracurricular activities. A non-[School] extracurricular activity shall be defined as an activity where [School] is not responsible for the enrollment or registration for that activity.

. . . .

(b) *[Daughter's] [School] Extracurricular Activities.* [Mother] shall have full and exclusive decision-making authority with respect to [Daughter's] [School] extracurricular activities, whether or not those activities occur during school hours or after school. A [School] extracurricular activity shall be defined as an activity where [School] is responsible for the enrollment or registration for that activity.

. . . .

Irrespective of which parent has custody of [Daughter] at any given time, [the parties] shall make educational decisions for [Daughter] by mutual agreement. If they are unable to agree, they shall jointly seek advice and counsel from [School] counselor(s).

FOFs 35 and 36 provide:

35. Summer school is an educational decision. Even if a particular class is more in the nature of an "elective" subject than a "core" subject, it is still a class at school and therefore an educational matter.

36. Summer school is not an extracurricular activity. Extracurricular activities are activities such as sports, clubs, and music groups.

COLs 16 and 18 provide:

team parent was made in good faith and therefore not in violation of HFCR Rule 11.

16. Whether or not [Daughter] should attend summer school is an educational decision.

. . . .

18. Given the parties' disagreement over summer school, they shall consult with [School] counselors to determine what is in [Daughter's] best interests regarding summer school.

At trial, Mother testified that she had the right to decide whether Daughter attended summer school because the Stipulated Order stated that Mother had the right to select Daughter's extracurricular activities and summer school was such an activity. Mother further stated:

[Mother]: . . . I think . . . [Daughter] is an excellent student, that she should be challenged, especially going into grade 8, where the actual summer school classes *count towards her AP credit.* So, in fact, when she enters college, hopefully it will be a first-rate college. *She will get credit for these summer school classes* and also decrease her high school case load.

(Emphases added.)

*Merriam–Webster's Collegiate Dictionary* 412 (10th ed.2000) defines "extracurricular" as "not falling within the scope of a regular curriculum; [*specifically* ]: of or relating to officially or semiofficially approved and [usually] organized student activities (as athletics) connected with school and [usually] carrying no academic credit." Mother's testimony that Daughter could earn academic credit for her summer school classes provides substantial evidence that summer school was, indeed, an educational matter and not an extracurricular activity.

Mother argues that according to the Stipulated Order, summer school is an extracurricular activity because School is "responsible for the enrollment or registration of that activity." In the context of the Stipulated Order as a whole, the subject language clearly means that an extracurricular activity is designated a "[School]" or "non-[School]" extracurricular activity depending on whether School or some other entity is responsible for enrollment or registration. The language does not define "extracurricular activity."

Given the foregoing, the family court's FOFs 35 and 36 are not clearly erroneous and COLs 16 and 18 are not wrong.

## C. Access to record

Mother argues that the family court erred by entering FOFs 41, 42, 43, 45, 46, 47, 48, 49, and 50 and COLs 22, 24, 26, and 27 because (a) ordering that the record remain confidential was not necessary and (b) limiting Mother's access to the record in this case was overly burdensome.

### 1. Necessity of confidentiality

■ Mother argues that Father failed to show with specificity that allowing the public to access the record in this case would pose any risk of harm to the public or the parties. Further, she argues that the family court "erred in linking the continued confidentiality of the 'Mary Roe Trust matter . . .' to this case."

On September 16, 1996, the family court filed an "Order Granting Request to Mark File 'Confidential,' " in which the court stated that Father had requested that the entire record in the matter be marked "confidential" and Mother had "supported the request."

At trial, Mother argued that since there was no longer an Estate, there was no longer any sensitive financial information to be kept confidential. She added that since Father had allowed information regarding Daughter's conception and his personal wealth to become public, there was no reason to keep the record confidential.

FOFs 45, 46, 47, 48, 49, and 50 provide:

45. As late as January 2003, pleadings were filed under seal and placed in the confidential cabinet in the . . . Estate probate and equity matters[.]

46. While reports and other matters in the . . . Estate probate matter no longer appear to be filed under seal, the Mary Roe Trust matter . . . remains confidential.

47. The Mary Roe Trust matter is closely related to the instant case. In fact, a number of issues in the [Stipulated Or-

der] and in the appeal in S.C. No. 25760 involved the Mary Roe Trust matter.

48. The [record] in the instant case contains sensitive information regarding both parties, but even more importantly, regarding [Daughter].

49. Disclosure of this information could not only be embarrassing to the parties and [Daughter], but could create a risk to [Daughter's] personal safety by making her a kidnapping target.

50. It is in [Daughter's] best interests that the [record] in this instant case remain confidential.

COLs 26 and 27 provide:

26. It is in [Daughter's] best interests that the [record] in the instant case remain confidential.

27. The [record] in the instant case shall remain confidential for at least as long as the Mary Roe Trust matter ... remains confidential.

Given that Mother agreed that the record in the instant case should be marked "Confidential" and the record contains sensitive information regarding the parties that could endanger Daughter, the family court did not abuse its discretion in refusing to remove the "Confidential" designation.

■ With regard to Mother's argument that the court had no basis for linking the "Mary Roe Trust matter" to this case, Mother fails to cite to the record or otherwise provide specific and admissible evidence to back up her claim. For this reason, we decline to address that issue. HRAP Rule 28(b)(3) (appellant's opening brief shall contain "the facts material to consideration of the questions and points presented, with record references supporting each statement of fact or mention of trial proceedings"); *Int'l Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.*, 68 Haw. 316, 322 n. 7, 713 P.2d 943, 950 n. 7 (1986) ("Counsel has no right to cast upon the court the burden of searching through a voluminous record to find the ground of an objection. It is counsel's duty to cite accurately the portions of the record supporting counsel's position." (Citation omitted.)).

FOFs 45, 46, 47, 48, 49, and 50 are not clearly erroneous, and COLs 26 and 27 are not wrong.

## 2. Burden of limiting Mother's access

■ At trial, Mother testified that her access to the record in the instant case should be unlimited:

A. I've always felt that I should have access to the files. . . . I can't find out who the presiding judge is; I can't find out any relevant orders in my case; I can't find out any hearing dates. I just lack the resources to make a formal motion to the Court because I'm always defending myself against allegations of other instances. But I should have the same access to the files that other people have. And I don't have [Father's] resources for judicial continuity. And just even the xeroxing charges are astronomical in this case.

She explained that she was only able to review the record on Fridays between 1:00/1:30 and 4:00 p.m. and could only look at one volume at a time. Because the record was designated "Confidential," it cost her $.50/page to copy documents, versus $.10/page for non-confidential documents. She stated that it was a $28,000 difference between $.50/page and $.10/page to copy the complete record in this case. She added that she also had to pay her attorney to review the record volumes with her. She testified that the last time she tried to schedule an appointment to review the record, she had to call the court ten times. She stated that she needed full access to the record because there were documents in the record she had never received and she wanted to be familiar with all orders in the record.

On appeal, Mother argues that the family court's limiting her access to her record is overly burdensome because

her counsel cannot employ messengers, paralegals and other assistants to assist with matters requiring review of the court records. In this manner, so long as [she] is represented by counsel, the Court's Order arbitrarily and unjustifiably requires that access and/or review of the files take place a[t] the highest possible cost to [her].

Mother states that since she appears pro se at times, any attorney she does hire is at a severe disadvantage because Mother's copy of the record is incomplete. She further contends the Order appears to state that if she is represented by counsel, *only her counsel* can review the record; she argues that she should be able to review the record with her attorney so they can openly discuss the case.

FOFs 41, 42, and 43 provide:

41. Because Family Court cases are often highly emotional, *pro se* litigants may be tempted to engage in improper conduct due to their close personal involvement in their cases.

42. Particular aspects of the instant case justify caution with respect to access to the [record]. This case has been highly litigated since 1996 as the parties agree on very little with respect to [Daughter].

43. Limiting access to the [record] to [Mother's] licensed Hawai'i attorney or an attorney representing her *pro hac vice*, under certain conditions, will ensure access to the [record] only by persons formally connected to the litigation in this case. Persons with no formal connection to the litigation in this case will be denied access to the [record].

COLs 22, 23, 24, and 25 provide:

22. [Mother] may have access to the [record] in this case through a licensed Hawai'i attorney or other attorney admitted *pro hac vice* to represent her so long as: (a) the attorney has filed an [a]ppearance in this case or other pleadings on behalf of [Mother] indicating that said attorney represents [Mother], or (b) the attorney has written consent, signed by [Mother], to review the [record] in this case.

23. The attorney who gains access to the [record] as provided above shall be charged the current rate per page to make copies of any requested page from the [record].

24. In the future, should [Mother] be representing herself *pro se*, she shall have access to the [record] only if she is accompanied by a Family Court staff person at a time arranged between the Family Court staff and herself.

25. [Mother] shall be charged the current rate per page to make copies of any requested page from the [record].

Although Mother does not argue this point on constitutional grounds, we analyze it according to a litigant's constitutional right to "access to the courts."

Decisions of the United States Supreme Court "have grounded the right of access to courts in the Article IV Privileges and Immunities Clause,[3] the First Amendment Petition Clause,[4] the Fifth Amendment Due Process Clause,[5] and the Fourteenth Amendment Equal Protection and Due Process Clauses." [6] *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12, 122 S.Ct. 2179, 2187 n. 12, 153 L.Ed.2d 413 (2002) (citations omitted; footnotes not in original).

In *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), the United State Supreme Court explained:

Prior cases establish ... that due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard.

... [T]he Constitution ... require[s] ... an opportunity granted at a meaning-

---

3. Article IV, Section 2, of the United States Constitution (Constitution) provides in relevant part that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens of the several States."

4. The First Amendment Petition Clause of the Constitution provides in relevant part that "Congress shall make no law ... abridging ... the right of the people ... to petition the Government for a redress of grievances."

5. The Fifth Amendment Due Process Clause of the Constitution provides in relevant part that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law[.]"

6. The Fourteenth Amendment to the Constitution and Article I, § 5 of the Hawai'i Constitution provide in relevant part that no person shall be deprived of "life, liberty, or property without due process of law."

ful time and in a meaningful manner for a hearing appropriate to the nature of the case.... In short, within the limits of practicability, a State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause.

*Id.* at 377–79, 91 S.Ct. at 785–87 (internal quotation marks, citations, and parentheses omitted; ellipsis in original omitted and ellipses added).

In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430 n. 5, 102 S.Ct. 1148, 1154 n. 5, 71 L.Ed.2d 265 (1982), the Supreme Court stated:

In *Boddie,* the Court established that, at least where interests of basic importance are involved, "absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." 401 U.S., at 377, 91 S.Ct., at 785. Thus, the State's imposition of substantial filing and other fees upon indigents seeking divorces was held to deny them due process. In *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973), we agreed that a due process right of access to the courts exists when fundamental interests are present and the State has exclusive control over "the adjustment of [the] legal relationship[s]" involved. *Id.,* at 445, 93 S.Ct., at 63[8].... *Boddie* ... relied in large part on the analysis of *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its guarantee "to all individuals [of] a meaningful opportunity to be heard." *Boddie,* 401 U.S., at 379, 91 S.Ct., at 78[7]; see also *id.,* at 377–378, 380, 382, 91 S.Ct., at 785–786, 787, 788.

In the instant case, we do not understand the family court's rationale in requiring Mother, if she is represented by an attorney, to access the record only through a licensed Hawai'i attorney or other attorney admitted *pro hac vice,* but allowing her, if she is representing herself pro se, to access the record only if accompanied by a family court staff person.

Given the apparent absence of a "countervailing state interest of overriding significance," *Logan,* 455 U.S. at 430 n. 5, 102 S.Ct. at 1154 n. 5, we conclude that the family court's restrictions violated Mother's right to free access to the courts.

With regard to the former restriction, Mother explains that having the freedom to review the record herself, even if she is being represented by an attorney, would allow her to substantially alleviate her legal expenses because she would not have to pay her attorney to do so. We agree that Mother should not be precluded from engaging in this kind of self-help. If Mother cannot afford to hire an attorney to adequately review the record in preparation for hearings or trials in the instant case, Mother should have the opportunity to prepare or assist her attorney in preparing for such by reviewing the record herself.

Additionally, we are unable to discern an adequate basis in the record for the family court's requiring that Mother, if proceeding pro se, be accompanied by a court staff member while she reviews the record in the instant case. There is no evidence in the record on appeal or in the case that Mother tampered with the record. Had she done so, or threatened to do so, the family court, to protect the integrity of the records, would have a basis to limit Mother's access. At trial, Mother argued that having to review the record accompanied by a court staff person was unduly burdensome due to the excessive amount of time it took to schedule such a review and because of the limited time periods available for such a review. In this case, the requirement that she be accompanied by a court staff person during her review of the record inhibits her ability to adequately prepare her for hearings and trials when she is representing herself.

### 3. Result

The family court's FOFs 41, 42, and 43 are clearly erroneous, and its COLs 22 and 24 are wrong.

### D. Remaining points of error

Mother claims that FOFs 14, 15, 17, 18, 19, 23, 24, 31, 33, 39, and 40 are clearly erroneous, but does not argue those points in her opening brief. Points not argued may be

deemed waived. HRAP Rule 28(b)(7). Therefore, we decline to address those points.

### E. Result

Given the foregoing, FOF 51 is clearly erroneous and COL 28 is wrong to the extent that they restrict Mother's access to the record in the instant case.

### IV.

The "Order Re: Plaintiff's Motion & Affidavit for Post Decree Relief Filed 11/8/04 and Defendant's Motion to Unseal File FC–D 95–2875 Filed 11/8/04 and Plaintiff's Motion & Affidavit for Post Decree Relief Filed 1/12/05," filed on August 10, 2005, and the "Order Denying Defendant's Motion for Partial Reconsideration of Order Re: Plaintiff's Motion & Affidavit for Post Decree Relief Filed 11/8/04 and Defendant's Motion to Unseal File FC–D 95–2875 Filed 11/8/04 & Plaintiff's Motion & Affidavit for Post Decree Relief Filed 1/12/05 and/or New Trial," filed on October 14, 2005, are reversed with respect to the family court's findings and conclusions that Mother acted as a team parent and the family court's restrictions on Mother's access to the record in the instant case. We affirm the two orders in all other respects.

